## CARTER V. STATE.

1. A person who has a contract to do state printing for one year commencing July 1, 1892, is entitled to print the auditor's annual report, which by Laws 1891, Chap. 70, must be made to the governor by December following the ending of the fiscal year in June, even though the auditor let the contract to another prior to the end of the fiscal year.

2. It was the intention of the legislature, in passing Laws 1891, Chap. 99, providing for five classes of state printing to be let by the secretary of

state, to have all the state printing done by contract; and a person who has a contract for the printing of the fifth class, which includes "printing of circulars and blanks for state officers, and all other printed matter not in pamphlet form, and not included in the foregoing classes," is entitled to do all printing not specifically designated in the other four classes.

(Opinion filed Dec. 23, 1896.)

Original action by Arthur L. Carter, assignee of the Free Press Company and of William G. Yates, against the state of South Dakota. Judgment for plaintiff.

The facts are stated in the opinion.

*Carter & Donahue*, for plaintiff.

*Coe I. Crawford*, Attorney General, for defendant.

CORSON, P. J.  This is an original action, brought against the state under the provisions of Chap. 1, Laws 1890, to recover damages alleged to have been sustained by the plaintiff and his assignor by reason of the failure of the state to furnish to them with certain printing, to which they claim they were entitled under printing contracts made with them by the state during the fiscal year of 1892–93. The case was, by agreement of the respective counsel, referred to a referee, who found the facts and stated his conclusions of law thereon, and has returned the same to this court, with a statement of the exceptions, and his rulings, and the evidence taken on the trial. The attorney general, on behalf of the state, has served and filed a number of exceptions to the findings of fact by the referee. In order to a proper understanding of the exceptions taken by the attorney general, it will be necessary to make a brief statement of the nature of the claim made for damages by the plaintiff. In June, 1892, the secretary of state, under the provisions of Chap. 99, Laws 1891, advertised for bids for the various classes of state printing; and the third class was awarded to the Free Press Company, and a contract entered into with that company on or about August, 1892. This contract, soon after its execution, was assigned to the plaintiff. One William G. Yates

about the same time entered into a contract with the state to do the printing specified in the fifth class. The section of the statute (Laws 1891, p. 228) providing for the several classes of state printing reads as follows: "The printing of the state of South Dakota is hereby divided into five classes as follows: First class. Printing and binding all bills for the two houses of the legislature, and such resolutions, petitions and memorials as are required to be printed for daily use of the legislative assembly. Second class. Printing and binding the journals of·the two houses of the legislature and such reports, communications and other documents as enter into and make up the journals. Third class. Printing and binding of reports of state officers, of penal and charitable, educational and other public institutions and other documents ordered by the legislature, together with executive documents and legislative manual. Fourth class. Printing and binding general laws and joint resolutions, revised codes and supreme court reports. Fifth class. Printing of circulars and blanks for state officers and all other printed matter not in pamphlet form and not included in the foregoing classes." The plaintiff and said Yates proceeded to do such printing as was required of them under their respective contracts, but they claim that a large amount of printing was ordered, from time to time, by state officers, and by many of the state institutions, and done by outside parties, which printing the said plaintiff and said Yates were entitled to do under their several contracts with the state; and that by reason thereof they lost the profits which they would have made upon such printing, and for which they are entitled to recover of the state. The claim of Yates was assigned to the plaintiff. The referee finds that three reports, which the plaintiff was entitled to print under the Free Press Company contract, namely, the report of the state auditor, the pharmaceutical report and the report of the state inspector of mines, which he was entitled to print under his contract, were printed by other parties, and that the plaintiff sustained damages by

reason thereof in the sum of $750, $575 of which was allowed by the referee for damages on account of the loss to him occasioned by the auditor having his report printed by other parties. The attorney general contends that the plaintiff was not entitled to the printing of this report under his contract, as the report was one made of the transactions of the auditor's office for the year ending June 30, 1892; and the Free Press contract was to do the printing for one year commencing on July 1, 1892. The law as it existed previous to 1891, required the state auditor to make a report to the governor, on or before December 15th, of the transactions of the preceding fiscal year ending November 30th. Comp. Laws, § 74. This section was in effect, amended by Chap. 70, Laws 1891, by providing that the fiscal year should end on June 30th, and by requiring all reports to be made to the governor on or before December 1st. In regard to the auditor's report we are now considering, it appears that the then auditor made a contract for the printing of his report with other parties, in May or June, 1892, and that it was completed in the fall of 1892. We have not been referred to any law authorizing the state auditor to make such a contract before the end of the fiscal year. The law clearly contemplates that subsequent to the end of the fiscal year, the auditor should prepare his report, to be submitted to the governor, and it logically follows that such report should be printed by the contractor for that class of printing, succeeding the end of such fiscal year. We are of the opinion, therefore, that the contention of the attorney general is not tenable, and that the plaintiff was entitled to print that report under his contract, and that he could not lawfully be deprived of that right by the act of the auditor in contracting for its printing prior to the end of the fiscal year.

The attorney general also contends that the amount of damages for the printing of the three reports found by the referee was excessive, and is not supported by the evidence. In this contention, we are of the opinion that the attorney general

is correct. The evidence as to the amount of profits the plaintiff would have derived from the printing of these reports is conflicting, but the preponderance of the evidence, it seems to us, clearly shows that $410 would compensate the plaintiff for the damages sustained by him on account of the reports being printed by other parties. The learned referee's finding of $750 should be reduced therefore, to $410.

Exception is also taken to the fourth finding of fact by the referee, in the second cause of action, for the reason that the referee found that the plaintiff sustained damages for the failure to furnish to him for printing, under his contract, the printing for the hospital for the insane, state militia, state agricultural college, school for deaf mutes, school of mines, state board of charities and corrections, state board of equalization, state penitentiary, Madison normal school, Spearfish normal school, local board for soldiers' home, state university, board of railroad commissioners, and state board of health. The aggregate amount of damages, as allowed to the plaintiff as assignee of said Yates, is about $600 by reason of these reports not being furnished to the said Yates to print.

The attorney general contends that the printing for these reports of institutions or boards is neither included in the Yates contract nor required, by the statute, to be printed by the contractor for printing under the act. Yates, by his contract "agrees and undertakes to make, print, and furnish circulars, blanks, letter heads, note heads, envelopes, lists of standing committees, roll calls, resolutions, blanks, blank reports of committees, names of members of legislature, labels for desks, signs for committees, cards and blanks of all kinds for the use of the state officers and the legislature of the state of South Dakota for the period of one year from July 1, A. D. 1892, including incidental printing for the legislature in said year and to furnish the material and perform the labor in producing the same." This contract was evidently intended to include printing of the fifth class, specified in Section 1. The

construction to be given to the provisions of Chap. 99, Laws 1891, is involved, and also the printing required to be done by the several contractors under that act. As will have been observed, the first section provides for the different classes of printing to be done for the state. Section 2 provides for and limits the compensation. Section 3 reads as follows: "The secretary of state shall be ex-officio commissioner of public printing and he shall have general supervision of all state printing, measuring the work and adjusting all accounts with contractors, in compliance with the law and regulations adopted by him." Section 4 provides for the publication of notices for bids, manner of letting contracts, etc. Section 5 requires the commissioner to submit estimates of the probable cost of printing for the ensuing two years. It would seem from an examination of these various sections of the act, that it was the intention of the legislature that all printing to be done for the state, state boards, and state institutions should be let by the secretary of state, as commissioner of printing, to the lowest responsible bidders, and that it was the intention of the legislature that all printing for which the state was liable to pay should be done by some one of the contractors for the state printing. There is nothing in the act to indicate that the legislature intended to provide that only a part of the printing for which the state should be liable should be done by contract with the lowest bidder, and another part should be done upon such terms as the boards or institutions might choose to pay. And we can perceive no reason why any such distinction should be made. The evident object and purpose of the legislature was to have the printing done by the lowest responsible bidder, in order that the state should not be subjected to unreasonable charges for its printing. We conclude, therefore, that the legislature intended to include, and we think the language of the act is broad enough to include, the entire printing of the state, except, perhaps, the printing necessarily required in blank record books. So far, therefore, as the blanks were specified in his

contract, he was entitled to print the same for all officers and institutions in the state for which the state, through its state auditor, was required to audit and draw his warrant therefor.

The attorney general further contends that the plaintiff was allowed damages on account of the Yates contract for failure to furnish catalogues, which are substantially pamphlets, specifically excepted from class 5; and also damages for blank books, plat books, etc., not included in his contract, and for which he was not entitled to recover damages. We think the attorney general is right, and we sustain his exceptions to these items. The following items of damages should, therefore, be deducted from the amount of damages allowed Yates on his contract, namely: Catalogues for agricultural college, $81.45; catalogues for Spearfish normal school, $95.75; house and senate journals, office of secretary of state, $15; plat books in the office of commissioner of school and public lands, $39.60; ledger and journal in office of state treasurer, $15; blank books in state auditor's office, $45,—aggregating $273.80. This sum, together with $340 excess, allowed on the Free Press Company contract, making a total of $612.80, should be deducted from the total allowed plaintiff by the referee.

We have not deemed it necessary to re-refer the case to the referee, but have concluded that this court can properly make the deduction. The plaintiff will, therefore, be entitled to a judgment for $410 on the Free Press Company contract, with interest from June 30, 1893, and $966.45 on the Yates contract, with interest from September 24, 1894, and for which judgment will be entered by the clerk of this court. The exceptions not herein specifically mentioned are overruled.