BISMARCK TRIBUNE COMPANY, a Corporation, Respondent, v. THE STATE OF NORTH DAKOTA, State Publication and Printing Commission of North Dakota, Frank Milhollan, Chairman of the Board of Railroad Commissioners, Thomas Hall, Secretary of State, Joseph A. Kitchen, Commissioner of Agriculture and Labor, and E. M. Crary, State Printer, as Members of and Constituting the State Publication and Printing Commission, Appellants, and KNIGHT PRINTING COMPANY, a Corporation, Intervener and Appellant.

(195 N. W. 823.)

**States — contractor for printing and binding entitled to all work of class reasonably included in contract during contractual period.**

1. Article 4, chapter 3 of the Political Code, being §§ 45 to 108, inclusive, Comp. Laws, 1913, as amended, contemplates that all state printing and binding shall be done by contract; and one who is awarded and enters into a contract to do such printing and binding is entitled to do all printing and binding of the class included in such contract that reasonably may be required and necessary for use during the biennial period covered thereby.

**States — contractor for state printing and binding entitled to print blanks and affidavits needed for years covered by contract.**

2. The holder of the contract for state printing and binding of the fifth class for the period beginning January 1, 1923 and ending December 31, 1924 is entitled to print the crop listing blanks and affidavits required by the state hail insurance department for the years 1923 and 1924.

Opinion filed November 2, 1923.

States, 36 Cyc. p. 879 n. 70.

From a judgment of the District Court of Burleigh County, *Jansonius*, J., defendants and intervener appeal.

Reversed.

*Geo. F. Shafer*, Attorney General, and *L. L. Twitchell*, for appellants.

"The printer agreed and undertakes to make, print, and furnish circulars, blanks, etc., for the use of the state officers and the legislature of the state of South Dakota, for a period of one year from July 1st,

A. D. 1892, including incidental printing for the legislature in said year, and to furnish the material and perform the labor in producing the same." Carter v. State (S. D.) 69 N. W. 593.

"From this it is obvious that no limit was, by the contract, put upon the discretion of the defendants as to the amount of coal they were to use in the mill. It might be much, little, or none at all. What coal was necessary for consumption in their works they must take from the plaintiffs. This was all they were bound to do, and all the plaintiffs were bound to furnish them; and it was of no consequence whether the falling off in that consumption was occasioned by the contraction of their business, or by the introduction of gas. In either case less coal was necessary for the defendants' manufactory, and they were not obliged to pay for what they did not require." Cannonsburg Iron Co. v. McKeever (Pa.) 16 Atl. 97.

"A contractor with a municipality for the erection of a sewage disposal plant may not maintain certiorari to review a subsequent ordinance providing for new plans, for he may sue in equity for the specific performance of the contract, or at law for damages, including profits, resulting from the refusal of the municipality to allow him to carry out the contract though the ordinance complained of violates the Federal and state constitutions prohibiting the passage of any law impairing the obligation of a contract." Wormser-Goodman Const. Co. v. Belman (N. J.) 77 Atl. 466.

"The review upon this writ cannot be extended further than to determine whether the inferior court, tribunal, board or officer has regularly pursued the authority of such court, tribunal, board, or officer." Baker v. Lenhart (N. D.) 195 N. W. 16.

Certiorari will not lie to review errors not going to the jurisdiction of inferior courts. State ex rel. Noggle v. Crawford (N. D.) 138 N. W. 2.

Certiorari will not issue when a party has an adequate remedy at law, or where an officer has jurisdiction to act, although he has acted erroneously. Geiger v. Lee (S. D.) 128 N. W. 139.

*William Langer, S. L. Nuchols,* and *Charles L. Crum,* for respondent.

"For two years, ending July 30th, 1906, the relator was awarded binding contract by the board of state auditors. By that contract re-

lator agreed 'to do and perform for the state of Michigan the binding, stitching, trimming, etc., and the work incident thereof which under the law comes within the binding contract, that may be ordered according to law by the legislative, judicial and executive departments for the term of two years,' etc.   Among the specifications, which are a part of the contract, is one, 'for binding of letters, journals, reports and documents, in paper, in cloth and in leather, to include folding, stitching,' etc.

"Relator was the successful bidder for the state printing for the term of two years, commencing July 1st, 1906.   Before that time the board of state auditors had given the relator three orders.   The respondent treated the orders as given and the work done under the former contract.   The relator claims compensation under the new contract which would entitle it to receive something over $500 more than would be allowed under the old contract.   Relator contends that the former contract was completed on the last day of its life, to wit: June 30th, 1906, and that whatever work was done afterwards, although the orders were given before, was done under the new contract.   We think this contention cannot be maintained.   Work had been commenced on some of the orders.   Much of the material was delivered after June 30th; but it was not delivered upon any order that originated under the new contract but under the old.   If the relator had not obtained the new contract and the orders had been received before the termination of its old contract, it would clearly have been entitled to complete the order. The language of the contract is clear that relator agreed to bind all the work ordered by the proper authority during the life of the contract, and that the respondent agreed to pay under the same contract.   It is therefore unnecessary to discuss the question of the prevailing usage or custom which respondent claims constituted a part of the contract." Robert Smith Printing Co. v. Board of State Auditors (Mich.) 112 N. W. 130.

The cancellation of a contract can only be effected in two ways: (1) By the mutual consent of the parties; (2) By a decree of a court of Equity.

When not effected by the mutual consent of the parties the authority of courts of equity is exclusive.   9 C. J. 1160.

"The effect of these several provisions is that upon the happening of

either or any of the events therein specified the lease shall terminate at the option of the lessor and she shall have the immediate right to re-enter and repossess the leased premises. But we know of no provision of law, and none have been called to our attention, which authorizes the Secretary of the Interior to adjudge and determine that the contingencies upon which the lease should terminate have happened. That is a matter which belongs to the judicial and not the executive department of the government. The right of the lessor, when denied, to re-enter and take possession of the leased property under and by virtue of the several provisions of the lease, can only be tried out in a court of law, and not by some executive department of the government. It follows from these views that the decree of the court below is right and must be affirmed." People v. Secretary of State, 58 Ill. 90; Mosgrove v. Harper (Or.) 54 Pac. 187.

"On the return of the writ, the district court, instead of entertaining jurisdiction and adjudicating the cause on its merits, quashed the writ, on the ground that the plaintiff has a plain, speedy and adequate remedy at law. In this we think the court committed error. While it is true that the district court was vested with a sound judicial discretion to grant or deny the writ when applied for, such discretion was exercised when the writ was issued and after the case had been brought before it by the issuance of such writ and the return thereto, the matter should have been adjudicated upon its merits as disclosed by the transcript and record from the justice's court. After proceeding thus far no good purpose would be subserved by requiring plaintiff to resort to some other remedy, even though another adequate *remedy* may have existed." Morrissey v. Blakey, 22 N. D. 430.

NUESSLE, J. This is an appeal from the judgment in a certiorari proceeding wherein the Bismarck Tribune Company, a corporation, is the plaintiff; the state of North Dakota, the state publication and printing commission and the individual members thereof are defendants; and the Knight Printing Company, a corporation, is intervener. From the judgment of the district court setting aside a resolution passed by the Publication and Printing Commission cancelling an order for certain printing and binding, and reinstating said order, the defendants and intervener appeal.

The matters out of which this proceeding arose are substantially as follows: In August, 1920, pursuant to the provisions of §§ 47 et seq., Comp. Laws 1913, requiring contracts for public printing and binding to be let to the lowest bidder, the defendant, the State Publication and Printing Commission, entered into a written contract with the Bismarck Tribune Company, the plaintiff and respondent, under the terms of which the said Tribune Company was awarded the contract to do public printing and binding of the fifth class as defined in § 46, Comp. Laws 1913, for the period of two years commencing January 1, 1921 and ending December 31, 1922. Under the terms of this contract, and in accordance with the statute, the plaintiff company bound itself, among other things, "to do and perform all printing and binding *required* by the legislative assembly and by the several state departments of the state of North Dakota for the two years commencing January 1, 1921 and ending December 31, 1922 of the character included in the said fifth classification of public printing and binding as defined in §§ 46, 48 and elsewhere in chapter 3, article 4 of the Political Code, Compiled Laws of North Dakota for 1913, at the rates and considerations specified in the bid of the said party of the second part for work under the said fifth classification of public printing;" and the Commission likewise contracted "to order of the said party of the second part (the plaintiff company) all that public printing and binding *required* by the legislative assembly and by the several state departments of the state of North Dakota for the said two years beginning January 1, 1921 and ending December 31, 1922, of the character embraced in the said fifth classification."

In May, 1922 again acting under the requirements of §§ 47 et seq., Comp. Laws 1913, as amended, the commission entered into a contract with the intervener, the Knight Printing Company, for the period of 1923 and 1924, beginning January 1, 1923 and ending December 31, 1924. This contract was in all respects, excepting the rate of compensation, identical with the contract entered into with the plaintiff company for the period of 1921 and 1922.

On December 14th, 1922 the state hail commissioner made his requisition upon the state printer for 1,200,000 crop listing affidavits and blanks, and the printing commission thereafter delivered such requisition and order to the plaintiff company.. These crop listing affidavits

50 N. D.—20.

and blanks so ordered to be printed were thought to be required by the state hail department for the year 1923. They were to be used in listing the crops for that year and were required to be delivered to the various assessors throughout the state not later than April 1, 1923. The regular session of the legislature was to convene on the first Tuesday of January, 1923, and the hail commissioner believed that some changes might be made in the law with reference to the matter of state hail insurance by the legislature, and therefore, the listing affidavits and blanks were not to be printed until it was ascertained what, if any, legislative action might be taken in that respect. The Tribune Company was so advised. Upon receipt of the order from the printing commission for the blanks in question the Tribune Company at once took steps to secure and did secure the necessary supplies to enable it to fill the order so delivered to it. It prepared and ran off proofs of the blanks which were submitted for inspection and correction. Nothing further was done about the matter, however, for the reason, as stated above, that it was necessary to wait with the work of printing until after the legislative session. On February 26th it came to the attention of the printing commission that there was some question as to whether the intervener was not entitled to the printing of these hail insurance blanks under its contract. It further appeared that the intervener's contract provided for a lower rate of charge than that of the plaintiff, and it also appeared that only 800,000 blanks would be required and not 1,200,000; that the difference in charge was such that the 800,000 would be printed and supplied by the intervener company at a price $1,400 less than would be charged by the plaintiff company for the same quantity under its contract. The printing commission, therefore, on February 26th passed a resolution cancelling its order with the Tribune Company, and the Tribune Company was so advised, and on March 3d the commission ordered 800,000 blanks to be printed by the intervener company. Thereafter the plaintiff company instituted this proceeding in certiorari for the purpose of having the court review and pass upon the propriety of the action of the printing commission with reference to the cancelling of the plaintiff's order and the placing of the order with the Knight Printing Company. The Knight Printing Company was not made a party to the proceeding, but becoming apprised thereof, made application, and the district court permitted

it to intervene. At the time the writ was issued, the intervener company had nearly completed the order, and had, as it was required to do, mailed out the blanks to some fifteen counties of the state.

The district court, after a consideration of the facts substantially as above stated, found that the printing commission had exceeded its jurisdiction in proceeding thus and ordered judgment in favor of plaintiff, requiring that the contract with the plaintiff company be reinstated. From the judgment entered upon this order the defendants and intervener perfected this appeal.

The appellants here urge: (1) that the action of the printing commission in cancelling the order for printing placed with the plaintiff company on December 14, 1922 was proper and lawful; (2) that even though such action by the printing commission was unlawful and constituted a breach of the contract held by the plaintiff company, that nevertheless certiorari will not lie to review the action of the commission and reinstate the order.

It is conceded by all parties that the printing in question was within the fifth classification of printing as contemplated by the several contracts entered into by the plaintiff and the intervener with the printing commission. It is further conceded that the construction of these contracts is determinative of the question as to whether the printing commission acted within its powers in cancelling the plaintiff's order and in awarding the order to the intervener. If, under the terms of these respective contracts, the commission had no discretion but were obliged to place this order with the Knight Printing Company, then the judgment must be reversed, and it is not necessary to consider the propriety of the remedy invoked. On the other hand, if the commission had no discretion and the Tribune Company was entitled to the printing in question as of right under its contract, it will be necessary to go further and pass upon the question of the propriety of the remedy.

It appears clear to us that §§ 47 et seq. of the Compiled Laws were enacted pursuant to a proper public policy in the interests of certainty and economy in the letting of contracts for public printing and for the further purpose of putting all such contracts beyond official favoritism or political preference. It was contemplated that when such a contract was let that that contract should control all of the printing of the particular class covered by the contract during the period specified therein.

See Daly v. Beery, 45 N. D. 287, 317, 178 N. W. 115. See also Carter v. State, 9 S. D. 420, 69 N. W. 593, construing a statute almost identical with § 47, supra. While the printing commission was charged with the duty of placing orders as required by the several state departments, it had little option or discretion in the matter, and could place only such printing as was reasonably required during such biennial period. The test is, was such printing reasonably required or necessary for use during the time covered by the contract? Any other construction of the section in question would negative the very purposes of its enactment. If a department might anticipate its requirements a year, why not for two years, or ten, or more, according to the judgment of those in charge? So the legislature, safe-guarding against such possibility, used the word *required*. In this case it appears that the blanks ordered were required for use in the year 1923. The plaintiff's contract expired on December 31, 1922. Long prior to the time when the order was placed, a contract for the following biennial period had been let to the intervener. The plaintiff knew or was chargeable with the knowledge of that fact. The plaintiff further knew when the blanks ordered would be required. It further knew that the work could not be completed during the period covered by its contract. It was expressly understood that the printing should not be done until it was ascertained whether or not changes would be made by reason of any action taken by the legislature.

It is not contended that plaintiff did not act in good faith, but in our view of the matter that is immaterial in this action. It may be that it was prejudiced by reason of purchasing supplies and material which it cannot use otherwise to advantage. If that be so, it may be that it has its remedy in an action for damages, but that is a question which we do not need to pass upon at this time and do not pass upon.

The respondent cites and relies upon the case of Robert Smith Printing Co. v. State Auditors, 148 Mich. 561, 112 N. W. 130. We think that case is clearly distinguishable from the case at bar. There the contract provided for the doing of all the work that might be *ordered* during its life. But even though it were not possible to thus distinguish the cases, we should not be inclined to hold otherwise than we do. We think §§ 47 et seq., under which the contract in the instant case was let, plainly discloses a legislative intent to limit the printing to be

placed thereunder to that which might reasonably be required or necessary for use during the period covered by such contract.

Under the terms of the intervener's contract, the intervener was entitled to receive the order for the blanks. That being the case, the judgment appealed from must be reversed with costs.

BRONSON, Ch. J., and BIRDZELL, JOHNSON, and CHRISTIANSON, JJ., concur.