[File No. 6538.]

KIDDER COUNTY FARMERS PRESS, Inc., a Corporation, Respondent, v. STATE OF NORTH DAKOTA, Appellant.

(280 N. W. 876.)

· Opinion filed July 1, 1938.

*Alvin C. Strutz,* Attorney General, and *Edw. B. Cox,* Special Assistant Attorney General, for appellant.

*Francis Murphy,* for respondent.

NUESSLE, J. This is an appeal from an order of the district court of Burleigh county, sustaining a demurrer to the defendant's answer. The plaintiff is a domestic corporation engaged in the printing business at Steele in Kidder county, North Dakota. In March, 1937, it printed some Adjuster's Daily Reports for use by the State Hail Insurance Department pursuant to a contract made with the State Publication and Printing Commission. The price was agreed upon and the reports were printed, delivered, and accepted by the Insurance Department. The bill for this printing was presented and payment demanded but the claim was rejected and disapproved. Thereafter, plaintiff having complied with the preliminary requirements, this action was brought to recover on account thereof.

The defendant, answering, denied liability upon the sole ground that the contract set out in the complaint, and on which the plaintiff sought to recover, "is null and void and of no effect and is not binding upon the state of North Dakota for the reason that the same is contrary to § 57a1 of the Supplement to the Compiled Laws of North Dakota for 1913 as amended in this that the printing described in said alleged contract did not have the label of the branch of the International Typographical Union of the city in which they were printed, and that they did not come within the exception of said § 57a1. . . ." To this answer the plaintiff demurred on the ground that the statute in question, § 57a1, is unconstitutional and void.

The trial court, after consideration, held that the answer did not set up a good defense and made its order sustaining the demurrer. The defendant thereupon perfected this appeal.

The following statutes are pertinent: Section 46, 1925 Supplement to the Compiled Laws, provides:

"The printing of the state is hereby divided into five classes, to be let in separate contracts as follows:

"1. The printing of bills, resolutions and other documents for the use of and incident to the legislative assembly shall constitute the first class.

"2. The printing and binding of the journals of the senate and house of representatives shall constitute the second class.

"3. The printing and binding of the executive and public documents and reports shall constitute the third class.

"4. The printing and binding of the volume of laws, with the joint resolutions, which shall be included in said volume, shall constitute the fourth class.

"5. The printing of all blanks, circulars and other miscellaneous job work necessary for the use of the executive departments, other than such as are printed in pamphlet form and not entering into the volumes of executive documents, and all printing not included in the foregoing classes shall constitute the fifth class."

Section 47, Compiled Laws 1913, provides:

"The commissioners of public printing shall at least six months immediately preceding each regular session of the legislative assembly advertise for four weeks successively in two daily papers in the state, one of which shall be at the seat of government, inviting sealed proposals for doing all printing and binding required by the legislative assembly and by the several state departments for the two succeeding years commencing with the first day of January next following the date of the contract, and such bids shall specify at what per cent below the maximum rates severally prescribed in the next section the bidder will perform the work and furnish the stock."

Section 47, supra, was amended by chapter 226, Session Laws 1935, to read as follows:

"The State Printing Commission shall, at least six months immediately preceding each legal session of the Legislative Assembly, advertise for four weeks successively in two daily papers in the State, one of which shall be at the Seat of Government, inviting sealed proposals for doing all printing and binding required under Classifications 1, 2, 3, and 4, required by the Legislative Assembly and by the several State Departments for the two succeeding years commencing with the first day of January next following the date of the contract, and such bids shall specify at what price and cost for which the said work will be performed and furnish the stock.

"Each department and office of the State Government may let the printing of all matters coming within Class 5 of § 46 of the 1925 Supplement to the 1913 Compiled Laws, to such newspaper or job printing shop in this State as are equipped to handle, perform and take proper care of the work required and to furnish the stock necessary. No newspaper or job printing shop awarded printing under this class

shall be permitted to sublet the same. Before letting or submitting such order for printing or miscellaneous job work to such newspaper or job printing shop, the department or state office shall submit such order or requisition for printing to the State Printing Commission and the State Printer, who shall determine and fix the reasonable cost or price for such printing or work and the stock required and such price so fixed and determined by the State Printing Commission and the State Printer, shall be the cost of and price paid by such department or office for the work and printing so ordered and the material furnished. Such cost and price so fixed shall not exceed the price and cost as provided for in the Franklin Printing Catalogue less 10 per cent. Such cost or price shall be determined and fixed by the State Printing Commission and the State Printer according to the kind and quality of. material required and the kind of work necessary. Upon the determining and fixing of such cost and price to be charged for the work required, the State Department or office may have such work and printing done and the material furnished by such newspaper or job printing shop in this State as the said State Department or state office shall select.

"All acts or parts of acts in conflict herewith are hereby repealed."

Section 57a1, 1925 Supplement, enacted as § 1 of chapter 173, Session Laws 1919, provides:

"All printing for which the state of North Dakota is chargeable, including reports of state officers, state boards, pamphlets, blanks and printed matter of every kind and description save and except letterheads, envelopes, certificates of appointment and election to office, shall have the label of the branch of the International Typographical Union of the city in which they are printed."

And § 57a2 of the Supplement, enacted as § 2 of chapter 173, Session Laws 1919, makes it an offense, punishable by fine, for any officer of the state to accept any printed matter save that excepted in § 57a1, which does not bear a label indicating it was printed in an office under the jurisdiction of the International Typographical Union.

While the demurrer interposed by the plaintiff to the defendant's answer is predicated upon the proposition that the statute, § 57a1, is unconstitutional and void, its effect is to challenge the legal sufficiency of the answer upon any ground of substance that may appear on the

face thereof. And this court will not pass upon the constitutionality of an act of the legislature unless it is necessary to do so in order to determine the litigation in which the question is raised. See Murie v. Cavalier County, ante, 242, 278 N. W. 243, and cases cited therein. So, if in the instant case the demurrer reaches any other vice in the answer which is fatal to its sufficiency, it must be sustained because of that insufficiency and without regard to the question of constitutionality sought to be raised.

We are of the opinion that the trial court rightly sustained the demurrer, and under the view that we take of the answer and of the statutes governing the doing of state printing it is neither necessary nor proper to determine the constitutionality of § 57a1, supra.

The statute, § 46 supra, divides state printing into five classes to be let in separate contracts. Concededly, the printing here involved falls within the fifth class thereof. Section 57a1, supra, requires that the several classes of state printing "shall have the label of the branch of the International Typographical Union of the city in which they are printed" but specifically excepts from this requirement certain of the printing of the fifth class. Under the provisions of § 47, Comp. Laws 1913, supra, and cognate statutes, all printing required by the legislative assembly and by the several state departments was to be let to the lowest bidder. See Comp. Laws 1913, § 51; Bismarck Tribune Co. v. State, 50 N. D. 301, 195 N. W. 823. Section 51 was amended by § 2 of chapter 98, Session Laws 1921, and as amended now appears as § 51 of the 1925 Supplement. But chapter 226, Session Laws 1935, supra, provides for a departure from the requirements theretofore prevailing in that under it printing of the fifth class is not required to be let to the lowest bidder but may be let to such "newspaper or job printing shop in this state as are equipped to handle, perform and take proper care of the work required and to furnish the stock necessary." The cost of such printing is not to be determined by competitive bidding but is "determined and fixed" by the State Printing Commission and the State Printer pursuant to the rules prescribed by § 2 of chapter 226, supra.

It is clear to us that the legislature in enacting chapter 226, evidenced an intention not only to institute a new plan for the letting of printing of the fifth class, but also to put all printing of the fifth class

in the same category with respect to the union label. Under § 57a1, supra, letterheads, envelopes, certificates of appointment and election to office were not required to bear the union label. Such printing was in the fifth class. Section 2, of chapter 226, evidences an intention to put all other printing in the fifth class within this same exception. The concluding words of § 2 clearly evidence such an intention. They are, "Upon the determining and fixing of such cost and price to be charged for the work required, the State Department or office may have such work and printing done and the material furnished by such newspaper or job printing shop in this State as the said State Department or state office shall select." The statute removes all restraint upon the authority of those requiring such printing other than that it shall be done at the cost and price fixed by the State Printing Commission and the State Printer, by any qualified printer or printing establishment in this state as the department or office requiring the printing shall select. The qualification prescribed by the statute is "such newspaper or job printing shop in this state as are equipped to handle, perform and take proper care of the work required and to furnish the stock necessary." This qualification is reinforced by the mandate that such printing shall not be sublet. And § 3 of chapter 226, supra, contains a repeal of all acts or parts of acts in conflict therewith. Since the defendant in its answer admits all of the allegations of fact contained in plaintiff's complaint and predicates its defense wholly upon § 57a1, and since this section has no application here, the trial court rightly sustained the demurrer.

The order of the district court must be and it is affirmed.

CHRISTIANSON, Ch. J., and BURR and MORRIS, JJ., and ENGLERT, Dist. J., concur.

SATHRE, J., being disqualified, did not participate, Hon. M. J. ENGLERT, Judge of First Judicial District, sitting in his stead.