[File No. 6528.]

W. J. MURIE, Respondent, v. CAVALIER COUNTY, a Public Corporation, Otto Rasmusson, County Auditor, Cavalier County, North Dakota, Vivian Morrison, County Treasurer, Cavalier County, North Dakota, Neil Nicolson, Paul Kastner, A. C. Anderson, John Ryan, and Andy Johnson, County Commissioners, Cavalier County, North Dakota.

CAVALIER COUNTY, a Public Corporation, Appellant.

(278 N. W. 243.)

Opinion filed February 26, 1938.

*Sinness & Duffy,* for appellant.

*E. J. Donovan* and *T. A. Thompson,* Assistant Attorney General, for respondent.

*A. R. Bergesen, C. G. Bangert, J. P. Cain* and *H. P. Jacobsen,* amici curiæ.

NUESSLE, J. Plaintiff brought this action to recover from the defendant, Cavalier county, the sum of $121.81, being interest and penalty on certain real estate taxes upon real property in Cavalier county for the years 1931 to 1936, both inclusive, which the plaintiff was compelled to pay over objection and under protest. Plaintiff's action is predicated upon chapter 240, Session Laws of 1937. The only rights plaintiff has or claims to have arise by virtue of that statute and not otherwise. So the sole question presented on this appeal relates to the meaning, the effect, and the validity of such statute.

Chapter 240, Session Laws of 1937, was introduced as House Bill No. 59 on January 21, 1937. During the course of its passage the bill was amended by striking out everything following the words "A Bill" (1937 House Journal, pp. 169, 592, 616, 690, 692) and substituting a much different measure. In order to visualize the changes made by such amendment we have set forth below in parallel columns the Bill as introduced, and the Act as enrolled and engrossed, signed by the officers of the two Houses of the Legislative Assembly, approved by the Governor on March 16, 1937, and filed in the office of the Secretary of State.

| As Introduced | As Enrolled and Engrossed; and as Approved by the Governor |
| --- | --- |
| An Act Providing for the Adjustment and Payments of Delinquent Taxes, and Declaring an Emergency. | An Act permitting the Board of County Commissioners to adjust real estate taxes levied or assessed against property within their County delinquent prior to December 1, 1936. Permitting payments in six installments. Providing manner of payments. Sus- |

pending operation of law and collection of delinquent taxes. Permitting suit by civil action and declaring an emergency.

Be it enacted by the legislative assembly of the State of North Dakota:

Section 1. Any person owing delinquent real property taxes levied or assessed against his property prior to December 1, 1936, may apply to the Board of County Commissioners of the County in which such taxes are payable for the right to adjust and pay such taxes as follows:

The application shall be in writing, executed in triplicate, and shall show:

(1) The full name and address of the applicant.

(2) The legal description of the property against which said taxes are a lien.

(3) An itemized statement of the total amount thereof, including interest, penalty and costs, if any.

(4) That the tax sale certificates, if any, outstanding are held by the county.

(5) That the applicant agrees to pay all delinquent taxes exclu-

Be it enacted by the legislative assembly of the State of North Dakota:

Section 1. The Board of County Commissioners where real estate or personal property taxes are delinquent may permit any person owning such property upon which taxes are delinquent prior to December 1, 1936, to pay the delinquent taxes assessed against his property, exclusive of interest and penalty in six annual installments. With interest at four per cent (4%) per annum, payable on or before October 15 of each year, ten per cent (10%) of the principal to be paid each year for two successive years and twenty per cent (20%) of the principal every year thereafter until the full amount of the principal with interest at four per cent (4%) is fully paid.

sive of penalty and interest, in six installments beginning February 28th after the acceptance of the application and agrees that the lien of such taxes and the obligation of applicant to pay same shall not cease unless or until applicant shall have made each and all of such said payments to be made as follows:

10% within 1 year

10% within 2 years

10% within 3 years

20% within 4 years

20% within 5 years

30% within 6 years from the date of approval of said application. Upon payment of said several sums the delinquent taxes shall be considered to be fully paid, and all interest and penalty waived.

Section 2. If the Board of County Commissioners find the statements in said application to be true and correct, it shall grant said request by resolution and the chairman shall endorse such approval on the back of each triplicate application; one copy shall remain in the auditor's office, one shall be filed with the County Treasurer and one shall forthwith be delivered to the applicant. If

Section 2. It shall be the duty of the Board of County Commissioners to require the owner of the property upon which there is delinquent taxes due and payable to enter into a contract with the Board of County Commissioners wherein the owner agrees to pay the full amount of the principal with interest at four per cent (4%) per annum from the date of the agreement.

the Board finds that any required statement is not contained in said application or that any statement is not true and correct, it shall deny same, or require amendment thereof.

Section 3. All other proceedings to collect such delinquent taxes shall be stayed unless and until the applicant shall fail to make one or more of payments when due. In case of such default the proper officials shall proceed to collect all of such unpaid delinquent taxes as though no contract had ever been made hereunder.

Section 4. No application hereunder shall be made or granted after October 1, 1937, and unless the applicant shall produce a receipt showing payment of current taxes against said property.

Section 3. Board of County Commissioners shall require the payment in full of all taxes to become due and payable against said property subsequent to November 1, 1937, before any agreement shall be made.

Section 4. All proceedings as by law required for the collection of the taxes due thereon shall be suspended so long as the owner shall continue the payments as herein provided. Upon the failure to make one or more payments when due, the proper officers of the County may proceed to collect all of the delinquent taxes due and payable thereon with penalty and interest as though no agreement had been made, and the County may also enforce the provisions of the contract by a civil action in the proper Courts of the State.

Section 5. Emergency. Whereas it is imperative that a means of adjusting delinquent taxes shall immediately be provided for the many distressed property owners of the State, this Act is necessary in the interest of the State government and municipal corporations, an emergency is hereby declared to exist and this Act shall be in full force and effect from and after its passage and approval.

Section 5. An Emergency. Whereas it is necessary to provide a method for distressed property owners to pay their taxes, this Act is hereby declared an emergency and shall be in full force and effect from and after its passage and approval.

The plaintiff in his complaint alleges that he was the owner of the land in question; that on the 17th day of June, 1937, he offered to enter into an agreement with the board of county commissioners of Cavalier county pursuant to the provisions of chapter 240, supra, to pay the delinquent taxes against the said land for the years 1931 to 1936, both inclusive, and, in that behalf, to do and perform all the things required by him to be done and performed by said chapter, but that the board of county commissioners refused to enter into any agreement with him. He further alleges that he tendered to the county treasurer of said county the full amount of the delinquent taxes against the said land without penalty and interest and that said tender was refused; that in order to make it possible to have a deed transferring the land in question to a purchaser recorded, he was required to and did pay the full amount of the principal of said delinquent taxes in the sum of $585.00 and also the penalty and interest thereon in the sum of $121.81; and he seeks a recovery in the amount of said penalty and interest so paid by him.

The defendants, answering, admit the matters and things thus alleged by the plaintiff in his complaint, and further answering, allege that the board of county commissioners of said Cavalier county on April 8, 1937, adopted a resolution to the effect that "It is to the best interest of the county and all taxing subdivisions of the county that the

County Treasurer and the County Auditor be not authorized by the said Board of County Commissioners to accept payments of delinquent taxes without penalty and interest under said law, and that no contract settlements of delinquent taxes be undertaken." The defendants further allege that § 3 of said chapter 240, supra, was not constitutionally enacted in this, that § 3 of the act as it was actually passed by the two houses of the legislative assembly, read as follows: "Section 3. Board of County Commissioners shall require the payment in full of all taxes to become due and payable against said property subsequent to November 1, 1936, before any agreement shall be made." But that the act as enrolled and engrossed and as signed by the officers of the legislative assembly and by the governor and as filed with the secretary of state reads as follows: "Section 3. Board of County Commissioners shall require the payment in full of all taxes to become due and payable against said property subsequent to November 1, 1937, before any agreement shall be made."

The case was tried to the court without a jury. The facts were stipulated. The trial court ordered judgment in favor of the plaintiff awarding him a recovery against the county for the amount of interest and penalty which he had paid on the delinquent taxes in question for the years 1931 to 1936, both inclusive. Judgment was entered accordingly and the defendant, Cavalier county, thereupon perfected this appeal.

In support of its appeal the defendant contends: (1) That chapter 240, supra, is not mandatory, that it does not require the board of county commissioners of any county to enter into contracts with delinquent taxpayers but merely empowers the board so to do when in their judgment it is to the best interests of the county to make such agreements, and that whether such contracts shall be made is a matter within the discretion of the board of county commissioners. (2) That said chapter 240, supra, was not constitutionally enacted in this, that § 3 of the act as signed by the officers of the two houses of the legislative assembly and approved by the governor, differs materially from that section as enacted by the legislative assembly, and that consequently said chapter 240 is wholly invalid and of no force or effect.

The plaintiff has no cause of action here unless he had an absolute right under the statute to enter into the agreement in manner and

form as thereby provided, and having done so to immediately prepay the obligation resulting from such agreement. If the board of county commissioners of Cavalier county had a discretion in the matter, if they had the right to determine whether contracts should be made with delinquent taxpayers and to refuse to make such contracts if it appeared to them that the best interests of the county and its taxpayers would be subserved by such refusal, then, of course, the plaintiff has no cause of action. And if the plaintiff has no cause of action under the statute as it stands, then the question of its validity is not involved and may not be properly determined on this appeal.

"A constitutional question does not arise merely because it is raised and a decision thereon sought. A party who assails the validity of a statute on constitutional grounds must show that he is prejudiced by the alleged unconstitutional provision, and that a decision on the constitutional question is necessary in order to protect him in the enjoyment of the rights guaranteed to him by the Constitution. 'Courts will not assume to pass upon constitutional questions unless properly before them, and the constitutionality of a statute will not be considered and determined by the courts as a hypothetical question. It is only when a decision on its validity is necessary to the determination of the cause that the same will be made, and not then at the instance of a stranger, but only on the complaint of those with the requisite interest. These principles have been recognized by the Supreme Court of the United States. That tribunal has announced that it rigidly adheres to the rule never to anticipate a question of constitutional law in advance of the necessity of deciding it, never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied, and never to consider the constitutionality of state legislation unless it is imperatively required.' 6 R. C. L. § 74, pp. 76, 77. And where a 'case may be decided on either one of two grounds, and one of these does not involve the constitutionality of a statute, the court will decide it on that ground.' 6 R. C. L. § 75, p. 77. . . .

". . . For 'one who is not prejudiced by the enforcement of an act of the legislature cannot question its constitutionality, or obtain a decision as to its invalidity on the ground that it impairs the rights of others. It has been said that courts cannot pass on the question of the constitutionality of a statute abstractly, but only as it applies and is

sought to be enforced in the government of a particular case before the court; for the power to revoke or repeal a statute is not judicial in its character.' 6 R. C. L. pp. 89, 91." Olson v. Ross, 39 N. D. 372, 167 N. W. 385.

See, also, State ex rel. Kaufman v. Davis, 59 N. D. 191, 229 N. W. 105; State v. Goeson, 65 N. D. 706, 262 N. W. 70; Federal Land Bank v. Johnson, 67 N. D. 534, 274 N. W. 668.

So if chapter 240, supra, did not confer upon the plaintiff the right to enter into the contract therein contemplated but left the matter subject to the judgment and discretion of the board of county commissioners, then he has no cause of action. And, on the other hand, if this be the case so far as the instant case is concerned the defendants are not affected by the provisions of the statute whether valid or invalid. And it necessarily follows that the question of the validity of chapter 240 is not material to the determination of this action and may not be passed upon at this time.

After a meticulous examination of the provisions of chapter 240, we have reached the conclusion that it is permissive and not mandatory; that by it the lawmakers intended to confer upon the boards of county commissioners of the several counties the power to enter into contracts with delinquent taxpayers, if, in their judgment, it was advisable to do so. In the absence of such a statute there was no authority on the part of the county boards to adopt a general policy with respect to the cancellation of penalty and interest on delinquent taxes, nor was there any authority to provide for the payment of such taxes over a term of years. It is to be noted in this regard that the statute as enacted is in many respects different from the bill that was introduced. The title of the bill as introduced recited that it was a bill for "An act providing for the adjustment and payment of delinquent taxes." According to the title as amended, the law finally approved was "An act *permitting* the Board of County Commissioners to adjust real estate taxes, etc." This change in language is clearly an indication of a purpose to change from a mandatory to a permissive enactment.

Further considering the act it is also to be noted that section 1 of the bill as introduced provided that "Any person owing delinquent real property taxes levied or assessed against his property prior to

December 1, 1936, may apply to the board of county commissioners of the county in which such taxes are payable for the right to adjust and pay such taxes as follows;" the bill then prescribed the form of application required to be made. And § 2 provided that "If the board of county commissioners finds the statement in said application to be true and correct it *shall* grant said request by resolution. . . ."

In the act as amended and approved by the governor, it is provided that "The board of county commissioners where real estate or personal property taxes are delinquent *may* permit any person owning such property upon which taxes are delinquent prior to December 1, 1936, to pay the delinquent taxes assessed against his property exclusive of penalty and interest in six annual installments." And section 2 of the act as approved provides that "It shall be the duty of the board of county commissioners to require the owner of the property upon which there is delinquent taxes due and payable to enter into a contract with the board of county commissioners wherein the owner agrees to pay the full amount of the principal with interest at 4 per cent per annum from date of the agreement." This latter provision, of course, must be read in the light of that part of § 1 of the act just above quoted. Thus read it clearly means that if the board of county commissioners exercises its discretion and determines that the application be granted, then it is its duty to proceed in accord with the provisions of § 2 of the act and not otherwise. But nowhere is there any provision in the law requiring that the board of county commissioners *shall* grant the application.

It must be noted too that there is a striking difference between the bill as introduced and the bill as passed as regards procedure. The bill as introduced made no provision for a contract. It merely required that application be made and that the approval be endorsed on such application. Under the act as finally passed no form of application is provided but it is specifically required that when permission is granted to a taxpayer to pay taxes in installments, a contract shall be entered into between such taxpayer and the county. If it had been contemplated by the legislature that payment of delinquent taxes must be accepted in every case as a matter of course under the provisions of chapter 240, and that every taxpayer in every county as a matter of course should have an absolute right to make payments of delinquent

taxes in installments upon the terms stated in the act, then clearly the making of such a contract with the taxpayer by the county commissioners was a needless and an idle ceremony. If such had been the intention of the legislature then all that would have been required was a provision to the effect that any taxpayer might pay taxes on the terms provided, and that upon accepting the benefits of the law a contract would arise and such obligations and liabilities would be created as were outlined in the statute. It is further to be noted that the bill as introduced authorized applications for payment of delinquent taxes in installments to be made annually up to October 1, 1937. The bill as finally passed contained no such limitation. Under it boards of county commissioners may enter into contracts affecting the payment of delinquent taxes at any time in the future until such law is repealed.

Of course the object sought in the construction of a statute is to ascertain and give effect to the intention of the lawmakers as expressed therein. It must be assumed that they used words and phrases according to the approved usage of the language; and it is only where that usage is out of harmony with what appears to have been the legislative intention that other meaning may be accorded to them.

It will, we think, be conceded that chapter 240 cannot be construed as mandatory unless the word "may" in § 1 thereof is construed to mean "must." "May" is permissive. It imports to have the power, to be able, to do a given thing. "Must" implies obligation or compulsion—to be legally or morally obliged to do a given thing. Webster's New International Dictionary. And in 39 C. J. 1393–1394, it is said:

"The verb 'may' may be and usually is employed as implying permissive or discretional, and not mandatory, action or conduct; or it may be employed as implying imperative or mandatory action or conduct. More specifically, 'may' has been construed sometimes to mean 'shall' and sometimes not to mean 'shall;' and sometimes to mean 'must,' and sometimes not to mean 'must;' sometimes to mean 'must' or 'shall,' and sometimes not to mean 'must' nor 'shall.' Whether the word is to be construed as mandatory or as permissive is to be determined in each case from the apparent intention as gathered from the context, considering the whole instrument in which it is used; and it

is always construed in a permissive sense unless necessary to give effect to the intent in which it is used."

See also Farmers & M. Bank v. Federal Reserve Bank, 262 U. S. 649, 67 L. ed. 1157, 43 S. Ct. 651, 30 A.L.R. 635.

The entire legislative history of chapter 240, supra, tends to show that when the legislature employed the word "may" in this statute it employed it in its usual and ordinary meaning. It was used in a permissive sense. It meant that the board of county commissioners might in their discretion determine whether or not applications for tax adjustments should be granted. In other words, the statute was intended to give to the boards of county commissioners the power to make contracts but it was not intended to make it compulsory for the board to do so.

It follows from what we have said above that the plaintiff is not entitled to recover. Accordingly the judgment must be and it is reversed and the action is dismissed.

CHRISTIANSON, Ch. J., and BURR, J., and HOLT, Dist. J., concur.

MORRIS, J., concurs in result.

SATHRE, J., being disqualified, did not participate, Hon. DANIEL B. HOLT, Judge of the First Judicial District, sitting in his stead.