WESTERN GAS RESOURCES, INC., successor in interest to Western Gas Processors, Ltd., Plaintiff and Appellant,

v.

M.K. Heidi HEITKAMP, Tax Commissioner of the State of North Dakota, Defendant and Appellee.

Civ. No. 920024.

Supreme Court of North Dakota.

Aug. 19, 1992.

Gary C. Davenport (argued), of McGloin, Davenport, Severson & Snow, Denver, and John W. Morrison (appearance), of Fleck, Mather & Strutz, Bismarck, for plaintiff and appellant.

Patrick K. Stevens (argued), Asst. Atty. Gen., State Tax Dept., Bismarck, for defendant and appellee.

JOHNSON, Justice.

Western Gas Resources, Inc. [Western], appeals from a district court judgment affirming a tax assessment by the North Dakota Tax Commissioner [Commissioner] under Chapter 57–51.1, N.D.C.C., the Oil Extraction Tax [OET]. We affirm.

Section 57–51.1–02, N.D.C.C., imposes an " 'oil extraction tax', upon the activity in this state of extracting oil from the earth." For purposes of the OET, Section 57–51.1–01(3) defines "oil" as "petroleum, crude oil, mineral oil, casinghead gasoline, and all liquid hydrocarbons that are recovered from gas on the lease incidental to the production of the gas." The principal issue in this appeal is whether "field condensate" is "oil" as defined by Section 57–51.1–01(3), N.D.C.C. Our analysis of this issue requires a description of "field condensate" and how Western recovers "field condensate" from natural gas.

Western is a gas processing company which owns and operates a natural gas gathering system and a natural gas processing facility in Billings County. Western purchases natural gas from various oil and gas producers and moves the gas through its gathering system to its processing facility at the Teddy Roosevelt Gas Plant [TR Plant]. At the well sites, the producers pump a mixture of oil, gas, and water from wells and separate the mixture into oil, gas, and water phases with a separator or heater treater. The producers dispose of the water, retain the oil, and pipe the gas stream in a vapor form to a "custody transfer meter" where custody and ownership is transferred to Western for move-

ment through its gathering system to its processing facility at the TR Plant.

As the gas stream moves through Western's gathering system, changes in pressure and temperature cause liquid hydrocarbons to condense in the pipeline. The liquid hydrocarbons are called "drips" or "field condensate" and are collected and stored in underground tanks called "drip locations." In addition to the "drip locations," Western also recovers field condensate at field compressor stations, where the gas is compressed in three separate stages to facilitate its movement to the TR Plant. Western sells all the "field condensate" at a crude oil price and puts it in a crude oil pipeline.

After compressing the gas at the compressor stations, Western pipes the gas to an inlet receiver or scrubber at the TR Plant. After the gas passes through the inlet receiver, Western processes the gas and additional liquids are recovered. The liquids recovered at the TR Plant are referred to as "plant condensate." Field condensate is recovered in Western's gathering system before the inlet receiver at the TR Plant and plant condensate is recovered after the inlet receiver.

On October 18, 1985, the Commissioner assessed an OET against Western for field and plant condensate recovered from January 1981 through December 1983. The Commissioner subsequently abated the assessment for plant condensate and also agreed to Western's valuation of the field condensate for determining the amount of OET. Western objected to the assessment for field condensate, contending that field condensate was produced after the custody transfer meter and was therefore not recovered "on the lease" as required by the definition of "oil" in Section 57–51.1–01(3), N.D.C.C.

An administrative hearing officer determined that field condensate was "oil" under Section 57–51.1–01(3), N.D.C.C. The hearing officer construed "all liquid hydrocarbons that are recovered from gas on the lease" to mean liquid hydrocarbons recovered in Western's gathering system before the inlet receiver at the TR Plant. The hearing officer recommended that Western be assessed an OET of $129,483.71. The Commissioner substantially adopted the hearing officer's findings of fact, conclusions of law, and recommendation. However, under Section 57–51–10, N.D.C.C., the Commissioner found good cause for waiving one hundred percent of the penalty and twenty percent of the interest on the OET. The Commissioner thus ordered Western to pay an OET of $129,483.71 plus eighty percent of the interest.[1] The district court affirmed the Commissioner's decision, and Western appealed.

■ Section 28–32–19, N.D.C.C., governs our review of decisions by an administrative agency. We affirm an agency decision unless its findings of fact are not supported by a preponderance of evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law. Section 28–32–19, N.D.C.C.; *Schiff v. North Dakota Workers Compensation Bureau*, 480 N.W.2d 732 (N.D.1992).

■ Western argues that field condensate is not "oil" as defined by Section 57–51.1–01(3), N.D.C.C., because it is not recovered "on the lease." Western asserts that "on the lease" means facilities ending with the custody transfer meter. Western contends that its processing plant begins at the custody transfer meter and therefore field condensate is produced at its processing plant and not "on the lease." The Commissioner responds that "on the lease" means facilities ending with the inlet receiver at the TR Plant. The Commissioner thus argues field condensate is a liquid hydrocarbon that is recovered from gas "on the lease" because it is recovered before the inlet receiver at the TR Plant.

■ The interpretation of a statute is a question of law and is fully reviewable by

---

1. According to the Commissioner's assessment, the tax and interest due through May 1991 is $238,377.70.

this court. *Rocky Mountain Oil & Gas Ass'n. v. Conrad,* 405 N.W.2d 279 (N.D. 1987). In construing statutes, our primary objective is to ascertain the intent of the Legislature. *Id.* The Legislature's intent must be sought initially from the language of the statute. *Peterson v. Heitkamp,* 442 N.W.2d 219 (N.D.1989). If the language of a statute is clear and unambiguous, we cannot ignore that language under the pretext of pursuing its spirit because the legislative intent is presumed clear from the face of the statute. *County of Stutsman v. State Historical Society,* 371 N.W.2d 321 (N.D.1985); Section 1–02–05, N.D.C.C. However, if the language of a statute is ambiguous, the court may resort to extrinsic aids to interpret the statute. *County of Stutsman, supra.* A statute is ambiguous if it is susceptible to differing but rational meanings. *Rott v. Connecticut General Life Ins. Co.,* 478 N.W.2d 570 (N.D.1991).

■ In this case, the definition of oil, particularly the extent and meaning of the "on the lease" modifier, is susceptible to different meanings. Both parties have presented rational interpretations of that language. We therefore conclude that the definition of "oil" in Section 57–51.1–01(3), N.D.C.C., is ambiguous.

Section 1–02–39, N.D.C.C., describes extrinsic aids which may be used to ascertain legislative intent when a statute is ambiguous. These include:

"1. The object sought to be attained.

"2. The circumstances under which the statute was enacted.

"3. The legislative history.

"4. The common law or former statutory provisions, including laws upon the same or similar subjects.

"5. The consequences of a particular construction.

"6. The administrative construction of the statute.

"7. The preamble."

■ The Commissioner construed "on the lease" to include all facilities prior to

the inlet receiver to the TR Plant. The Commissioner thus concluded that field condensate was oil under the OET. The administrative construction of a statute by the agency administering the law is entitled to deference if that interpretation does not contradict clear and unambiguous statutory language. *Rocky Mountain Oil & Gas Ass'n., supra; Stutsman County, supra; see* Section 1–02–39(6), N.D.C.C. Administrative deference is an important consideration when an agency interprets and implements a law that is complex and technical. *True v. Heitkamp,* 470 N.W.2d 582 (N.D. 1991). Here, the Commissioner's interpretation is especially persuasive and entitled to deference because of the complex and technical nature of the OET and because that interpretation comports with the language of the statute and the legislative history. *See* Section 1–02–39(3), N.D.C.C.

The OET was originally approved by the voters as an initiated measure on November 4, 1980. 1981 N.D.Sess. Laws ch. 649. As originally approved, the OET defined "oil" as "petroleum, crude oil, mineral oil, casinghead gasoline, and all liquid hydrocarbons that are recovered from gas by means of a separator, or by other nonmechanical methods, incidental to the production of the gas." *Id.* at § 4. The 1981 Legislature changed "by means of a separator, or by other nonmechanical methods" to "on the lease." 1981 N.D.Sess.Laws ch. 612, § 2.

The legislative history for that change indicates that representatives from the oil and gas industry initially requested the same definition of oil for both the OET and the Gross Production Tax [GPT], Ch. 57–51, N.D.C.C.[2] March 9, 1981 Minutes of Senate Finance and Taxation Committee regarding HB 1651. However, representatives from the Tax Department requested a broader definition of oil under the OET to ensure that liquid hydrocarbons like light crude were taxable. *Id.;* March 11, 1981 Minutes of Senate Finance and Taxation Committee regarding HB 1651; *see also*

---

**2.** Section 57–51–01(5), N.D.C.C., defines "oil" under the gross production tax as "petroleum, crude oil, mineral oil, and casinghead gasoline."

March 20, 1981 Conference Committee regarding HB 1651. In explaining why members of the oil and gas industry wanted the same definition of oil for both the OET and the GPT, counsel for the Tax Department said that members of the industry were concerned that the term "nonmechanical methods" might allow the Commissioner to impose an OET on liquid hydrocarbons processed at a gas plant. March 11, 1981 Minutes of Senate Finance and Taxation Committee regarding HB 1651. However, counsel explained that the Commissioner did not intend to impose the OET on liquid hydrocarbons processed at a gas plant. *Id.* Representatives from the oil and gas industry then requested clarification of "nonmechanical methods" and it was agreed to substitute "on the lease" for "nonmechanical methods." *Id.*

Although Western asserts that a contrary legislative intent is shown by one legislator's statement that oil meant "liquid hydrocarbons that are recovered from gas and this is on the site," the legislative history, as a whole, indicates a legislative intent to tax liquid hydrocarbons recovered before processing at a gas plant, but not liquid hydrocarbons processed at a gas plant. The technical meaning of processing [3] indicates that processing does not include normal field processes like compression, natural pressure reduction, and heating. H. Williams & C. Meyers, Manual of Oil and Gas Terms, 954 (8th ed. 1991). That technical definition supports the Commissioner's interpretation of "on the lease" in this complex and technical area.

■ Although we generally attempt to resolve questions of doubtful legislative intent in favor of the taxpayer [*Great Northern Railway Co. v. Flaten*, 225 N.W.2d 75 (N.D.1974)], the legislative history, as a whole, establishes a clear legislative intent that "all liquid hydrocarbons that are recovered from gas on the lease" means liquid hydrocarbons that are recovered before

processing at a gas plant. The Commissioner's interpretation of "on the lease" comports with that legislative intent and is in accordance with the law.

■ Western contends that the Commissioner's interpretation violates due process and is arbitrary, capricious, and unreasonable because it does not adequately warn taxpayers. We disagree.

■ A statute is not unconstitutionally vague if its language, "when measured by common understanding and practice, gives adequate warning of the conduct proscribed and marks boundaries sufficiently distinct for judges and juries to fairly administer the law." *Stoner v. Nash Finch, Inc.*, 446 N.W.2d 747, 755 (N.D.1989); *see County of Stutsman, supra.* A statute is not unconstitutionally vague merely because it is necessary to resort to extrinsic aids to construe the statute. *State v. Schwalk*, 430 N.W.2d 317 (N.D.1988); *see County of Stutsman, supra.*

Section 57–51.1–01(3), N.D.C.C., when considered in light of the clear legislative intent to tax hydrocarbons recovered before processing at a gas plant, provides adequate notice of the meaning of "on the lease."

■ With that interpretation in mind, we review the Commissioner's determination that field condensate is "oil" under Section 57–51.1–01(3), N.D.C.C. In reviewing an agency's findings of fact we do not make independent findings of fact or substitute our judgment for that of the agency. *Stepanek v. North Dakota Workers Compensation Bureau*, 476 N.W.2d 1 (N.D.1991). Rather, our review is based upon whether a reasoning mind could have reasonably determined that the agency's findings were proved by the weight of the evidence from the entire record. *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214 (N.D. 1979).[4]

The Commissioner made elaborate findings about the procedures employed by

---

**3.** "Processing" means "any process designed to remove elements or compounds (hydrocarbon and nonhydrocarbon) from gas, including absorption, absorption, or refrigeration. Field processes which normally take place on or near the lease, such as natural pressure reduction,

mechanical separation, heating, cooling, dehydration, and compression are not considered processing." H. Williams & C. Meyers, Manual of Oil and Gas Terms, 954 (8th ed. 1991).

**4.** This somewhat awkwardly phrased test is taken from *State Insurance Commissioner v. Na-*

Western, relying in part upon a videotape depicting the procedures employed in Western's gathering system and its processing facility. The Commissioner found that Western's gas plant did not include the gathering system and, instead, consisted of the processing facility located after the inlet receiver at the TR Plant. Although Western presented contrary evidence, the Commissioner's expert, Dr. E. Hunter Herron, testified that a gas plant generally begins at the plant gate and that the TR Plant begins at the inlet scrubber or receiver. The Commissioner also found that field condensate was a liquid hydrocarbon, recovered before the inlet scrubber at the gas plant.

After reviewing the record, including the videotape, we agree that a reasoning mind could reasonably conclude that Western's plant began at the inlet receiver of the TR Plant and that field condensate was recovered outside the gas plant. The Commissioner's findings of fact are supported by a preponderance of the evidence. Those findings of fact support the Commissioner's conclusion of law and determination that field condensate is a liquid hydrocarbon that is recovered from gas on the lease and is therefore "oil" under Section 57–51.1–01(3), N.D.C.C.[5]

■ Western also asserts that the Commissioner's determination that good cause existed under Section 57–51–10, N.D.C.C.,[6] for abating only twenty percent of the interest in this case is not supported by the findings of fact. Western asserts that one hundred percent of the interest should have been abated.

Section 57–51–10, N.D.C.C., provides that the Commissioner "in his discretion for good cause shown, may waive the penalty or the interest" for delinquent taxes. In addition to the explicit language according discretion to the Commissioner, the use of the word "may" also ordinarily implies discretionary action. *Murie v. Cavalier County*, 68 N.D. 242, 278 N.W. 243 (1938). In this case the Commissioner informed Western in 1984 that field condensate was subject to the OET. No taxes were paid and the State has not had use of that tax money in the interim. Under these circumstances, we cannot say that the Commissioner abused her discretion in abating only twenty percent of the interest.

Western also requests attorney's fees under Section 28–32–21.1, N.D.C.C. Western is not a prevailing party under that statute and therefore is not entitled to attorney's fees.

We affirm the district court judgment.

ERICKSTAD, C.J., and MESCHKE, LEVINE and VANDE WALLE, JJ., concur.

---

tional *Bureau of Casualty Underwriters*, 248 Md. 292, 236 A.2d 282 (1967).

5. Because of our resolution of this issue, we need not determine if the Commissioner's findings that field condensate is petroleum, crude oil, mineral oil, and casinghead gasoline under Section 57–51.1–01(3), N.D.C.C., are also supported by a preponderance of evidence. Our resolution of this issue makes it unnecessary to consider if "on the lease" also modifies "petroleum, crude oil, mineral oil, [and] casinghead gasoline" under Section 57–51.1–01(3), N.D.C.C.

6. For purposes of administration of the OET, Section 57–51.1–05, N.D.C.C., incorporates the provisions of Chapter 57–51, N.D.C.C., for administration of the GPT, including payment of interest and penalties.

Section 57–51–10, N.D.C.C., provides:
*"Proceedings and penalty on delinquency.* Where the tax provided for in this chapter shall become delinquent, there is hereby imposed a penalty of five dollars, or a sum equal to five percent of the tax due, whichever is greater, together with interest at the rate of one percent per month on the tax due, for each calendar month or fraction thereof during which such delinquency continues, excepting the month within which such tax became due, which shall be collected in the manner hereinafter provided. If any person shall fail to make any report herein required, within the time prescribed by law for such report, it shall be the duty of the commissioner to examine the books, records, and files of such person to ascertain the amount and value of such production to compute the tax thereon as provided herein, and he shall add thereto the amount of any penalties accrued thereon. The Commissioner, in his discretion for good cause shown, may waive the penalty or the interest provided by this section."