**KOCH OIL COMPANY, a division of Koch Industries, Inc., Plaintiff and Appellee,**

v.

**Bob HANSON, Tax Commissioner of the State of North Dakota, Defendant and Appellant.**

Civ. No. 950028.

Supreme Court of North Dakota.

Sept. 1, 1995.

David Luce (argued), Wichita, KS, and John W. Morrison (appearance), of Fleck, Mather & Strutz, Bismarck, for plaintiff and appellee.

Kathryn Saugstad Alfson (argued), Assistant Attorney General, Tax Department, Bismarck, for defendant and appellant. Appearance by Robert Wirtz.

LEVINE, Justice.

Bob Hanson, North Dakota State Tax Commissioner, appeals from a district court judgment reversing his January 19, 1994, order denying Koch Oil Company's petition for reconsideration of the Commissioner's November 17, 1993, order allowing assessment of additional oil extraction taxes and gross production taxes, penalties, and interest against Koch. We reverse and remand for entry of judgment affirming the Commissioner's order.

In November 1984, the Commissioner began an audit of Koch's books and records to determine if Koch had paid the correct amount of gross production taxes[1] and oil extraction taxes[2] under Chapters 57–51 and 57–51.1, N.D.C.C., for the years 1980, 1981, 1982 and 1983.[3]

By letter of July 28, 1986, the Commissioner notified Koch that gross production tax and oil extraction tax, plus penalty and interest, were due for the period January, 1980 through December, 1983. The notice of determination stated:

"This Notice addresses only the issue of unreported oil, acquired by Koch through its activities as an oil purchaser, upon which no tax has been paid. Barrel gains on the attached schedules include only the gains from Koch's various system points extracted from the reconciliations provided by Koch of deliveries vs. acquisition of oil in North Dakota."

1. Section 57–51–02, N.D.C.C., provides for a gross production tax:

"A tax of five per centum of the gross value at the well is levied upon all oil produced within North Dakota, less the value of any part thereof, the ownership or right to which is exempt from taxation. The tax levied attaches to the whole production, including the royalty interest."

2. Section 57–51.1–02, N.D.C.C., provides for an oil extraction tax:

"There is hereby imposed an excise tax, to be known as the 'oil extraction tax', upon the activity in this state of extracting oil from the earth, ... The rate of tax shall be six and one-half percent of the gross value at the well of the oil extracted, ..."

3. At the Commissioner's request, the 1983 Legislature appropriated funds to employ additional oil and gas tax auditors. S.L.1983, Ch. 44, § 1, subd. 11, enacting S.B.2001.

Koch protested. After considering Koch's protest, the Commissioner issued a notice of reconsideration and assessment on March 27, 1987, assessing the same taxes and penalties as in the July 28, 1986, notice of determination, and assessing additional interest.

Koch filed an administrative complaint seeking an order that the Commissioner's assessment was invalid. On July 30, 1993, Kathryn Alfson, an Assistant Attorney General representing the Commissioner, and Benjamin L. Burgess, Jr., an attorney representing Koch, executed a stipulation:

> "During the Commissioner's audit of Koch's accounting records for the years 1980, 1981, 1982 and 1983, the Commissioner examined Over and Short Reports that were prepared and maintained by Koch in the ordinary course of its business.... From the data provided by Koch in its Volume Reconciliation Report dated May 13, 1988, the Commissioner prepared schedules showing Koch's net gains or losses (referred to by Koch as overages and shortages), calculated in barrels of oil, for each of the tax years audited. These schedules are attached to this Stipulation as 'Exhibit A' and 'Exhibit A–1'.

> "III.
>
> * * *
>
> "A definition of each of the above accounts and the line items listed on Exhibits A and A–1 are as follows:
>
> * * *
>
> "10. *Total Gain (Loss):* The amount reported on line 10 of Exhibit A, reflects the gain (loss) (line 8), calculated in barrels of oil, after adjustments have been made to correct accounting and mis-coding errors (line 9).
>
> * * *
>
> "14. *Gain (Loss) to North Dakota:* The amount reported on line 14, Exhibit A, represents an allocation of gain or loss applicable to production from wells located in North Dakota....

> "IV.
>
> "The parties hereby stipulate and agree that the data contained on the schedules attached to this Stipulation as Exhibit A and Exhibit A–1 represent an accurate accounting of the volumes of oil received, purchased, or acquired, and volumes of oil delivered and sold by Koch at Koch's individually numbered locations identified in Exhibit A, during the years 1980, 1981, 1982 and 1983. The parties stipulate and agree that the data set forth on line 14 of the attached Exhibit A accurately represents the gain or loss attributable to production from wells located in North Dakota...."

Koch purchased oil at the well. Koch measured the volume of oil purchased at the well by a hand gauging method, settled with the producer, and deducted and paid gross production and oil extraction taxes based on the value of the oil at the well. When Koch delivered the oil to pipeline shipping points, the volume of oil delivered was measured with a meter. Differences between the volumes hand gauged at the well and reported by Koch for taxation and the volumes metered at the pipeline were classified as volume gains or losses. In 46 of the 48 months audited, there were volume gains. As shown in the stipulation exhibits, the volume gains for the four years totaled 137,822 barrels, which the Commissioner deemed to be untaxed oil. The Commissioner assessed additional gross production and oil extraction taxes on those 137,822 barrels of volume gain measured by meter at the pipeline. The Commissioner valued the 137,822 barrels of oil at the well by averaging, "on a monthly basis, [ ] the prices Koch paid to all of its producers for oil acquired from North Dakota leases during the period 1980 through 1983."

In a September 15, 1993, telephone conference with the independent hearing officer assigned to the proceeding, counsel for the parties agreed that the matter could be decided as a matter of law with no hearing to establish facts. Construing Chapter 57–51 and 57–51.1, N.D.C.C., the hearing officer concluded that the Commissioner was authorized to tax the volume gain reflected by a

metered measurement of the oil delivered by Koch at the pipeline, less the volume of oil measured at the well by hand gauging, and to value that oil at the well by averaging the prices paid by Koch to all of its producers for oil acquired from North Dakota leases during the audit period. The hearing officer recommended that the Commissioner require Koch to pay gross production and oil extraction taxes on the 137,822 barrels of oil at the gross value at the well, plus penalty and interest.

The Commissioner issued an order adopting the hearing officer's recommendation. Koch petitioned for reconsideration. On January 19, 1994, the Commissioner issued a final order denying Koch's petition for reconsideration. Koch appealed to the district court. The district court concluded that the Commissioner's findings of fact were not supported by a preponderance of the evidence, his conclusions of law were not sustained by findings of fact, the decision was not supported by the conclusions of law "or by applicable statutory law," and that the Commissioner's decision was an attempt to impose an unknown source oil tax, which this state has not enacted.

■ In an appeal from a district court judgment entered on an appeal from an administrative agency decision, we review the agency decision, and not that of the district court, limiting our review to the record before the agency, without considering the district court's findings. *Hakanson v. Department of Human Services*, 479 N.W.2d 809 (N.D.1992). Under §§ 28–32–19 and 28–32–21, N.D.C.C., we affirm an agency's fact-based decision if its findings of fact are supported by a preponderance of the evidence, its conclusions of law are supported by its findings of fact, its decision is supported by its conclusions of law, and its decision is in accordance with the law. *Ollie v. North Dakota Dep't of Human Services*, 520 N.W.2d 233 (N.D.1994); *Griffin v. North Dakota Workers Compensation Bureau*, 466 N.W.2d 148 (N.D.1991). In determining if an administrative agency's findings of fact are supported by a preponderance of the evidence, we determine only if a reasoning mind reasonably could have determined that the agen-

cy's factual conclusions were supported by the evidence. *Pleinis v. North Dakota Workers Compensation Bureau*, 472 N.W.2d 459 (N.D.1991). The interpretation of a statute is a question of law, which is fully reviewable by this court. *Western Gas Resources, Inc. v. Heitkamp*, 489 N.W.2d 869 (N.D. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1281, 122 L.Ed.2d 675 (1993); *Rocky Mtn. Oil & Gas Ass'n v. Conrad*, 405 N.W.2d 279 (N.D.1987).

■ The practical construction of a statute by the agency administering it is entitled to some weight if the agency interpretation does not contradict clear and unambiguous statutory language. *Rocky Mtn. Oil & Gas Ass'n v. Conrad, supra*. We will normally defer to a reasonable interpretation of a statute by the agency enforcing it, especially when that interpretation does not clearly contradict the statutory language. *Schaefer v. Job Service North Dakota*, 463 N.W.2d 665 (N.D.1990). "Administrative deference is an important consideration when an agency interprets and implements a law that is complex and technical." *Western Gas Resources, Inc. v. Heitkamp, supra*, 489 N.W.2d at 872. The oil extraction tax is of a complex and technical nature. *Id.* The gross production tax is also complex and technical.

> " 'Resolution of the issue falls within our line of cases which holds that when an administrative agency interprets and implements a law which is of a complex and technical nature, the agency's interpretation will be upheld unless it exceeds the bounds of the authorizing legislation or is arbitrary and unjust. Generally, if the subject matter of a question before an administrative agency is of a highly technical nature, the agency expertise in that area is entitled to appreciable deference, and we are reluctant to substitute our judgment for that of the administrative agency.' "

*NL Indus., Inc. v. North Dakota State Tax Comm'r*, 498 N.W.2d 141, 146 (N.D.1993), quoting *True v. Heitkamp*, 470 N.W.2d 582, 587 (N.D.1991).

Using metered measurements at pipeline shipping points of the same oil that Koch had measured by hand gauging at the wells from

which the oil was produced, the Commissioner found that "the number of barrels of oil Koch realized as volume gains were ... 137,822 barrels." Koch contends that this finding was not supported by a preponderance of the evidence, arguing that the Commissioner failed to prove that Koch possessed an identifiable volume gain of oil upon which to assess taxes. We disagree.

As we have already noted, counsel for the parties agreed that the matter could be decided as a matter of law with no hearing to establish facts, and the parties stipulated:

"... From the data provided by Koch ..., the Commissioner prepared schedules [Exhibit A and Exhibit A–1] showing Koch's net gains or losses ..., calculated in barrels of oil, for each of the tax years audited. . . .

* * *

"... the data contained on the schedules attached to this Stipulation as Exhibit A and Exhibit A–1 represent an accurate accounting of the volumes of oil received, purchased, or acquired, and volumes of oil delivered and sold by Koch ... the data set forth on line 14 of the attached Exhibit A accurately represents the gain or loss attributable to production from wells located in North Dakota."

The exhibits showed a total volume gain of 137,822 barrels in the four-year audit period.

■■■■ Stipulations eliminating important questions of fact in the trial of an action are looked upon with favor and cannot be treated lightly. *Bjerken v. Ames Sand & Gravel Co., Inc.,* 206 N.W.2d 884 (N.D.1973). "A stipulation which is not in defiance of the law and is not a fraud on the court is conclusive upon the parties, at least until they are properly relieved from the terms of the stipulation." *Oakes Farming Ass'n v. Martinson Bros.,* 318 N.W.2d 897, 904 (N.D.1982).

■■■■ Koch paid taxes based on the volume of oil it measured by hand gauging at the well. The Commissioner assessed additional taxes based on the difference between the volume of oil hand gauged by Koch and the volume of oil measured by meter at pipeline delivery points downstream from the well. The Commissioner could reasonably conclude that meter gauging is more accurate than hand gauging. Thus, for example, the affidavit of Bob Dix, Manager of Measurement for Koch, stated that "[m]eter gauging is considered by the industry as more accurate than handgauging."

In light of the parties' stipulations, we conclude that a reasoning mind could reasonably have determined, as the Commissioner did, that Koch experienced a volume gain of 137,822 barrels of oil that had not been taxed.

Koch contends that the Commissioner's conclusions of law are not sustained by his findings of fact and the decision is not supported by the conclusions of law, arguing that it is impossible to determine values at the well when using downstream measurements; that, because Koch's purchases were at arm's length, the Commissioner may not assess additional taxes; and that the Commissioner's interpretation of §§ 57–51–02 and 57–51.1–02, N.D.C.C., is erroneous.

■■■■ Koch argues that the price it paid for oil was well-specific, varied for different purchases from the same well, was time sensitive, and "because the oil is commingled at the pipeline, it is impossible to allocate 'overages' back to any individual well and, therefore, that there is no method to accurately determine which, if any, of the wells produced what amount of overage." The phrase "gross value at the well" in §§ 57–51–02 and 57–51.1–02, N.D.C.C., means the fair market value of the oil at the well. *See Amerada Hess Corp. v. Conrad,* 410 N.W.2d 124 (N.D.1987). In construing § 57–51–02, N.D.C.C., which used to deal with both oil and gas, this court said that the "trial court correctly concluded that ... 'where there is no price prevailing at the time of production, the Tax Commissioner may use any method of valuing gas that is reasonably calculated to arrive at the fair market value of the gas, which may include the workback method.'" *Amerada Hess Corp. v. Conrad, supra,* 410 N.W.2d at 130. The Commissioner's use of downstream metered measurements of the volume of oil to be taxed, rather than relying on hand gauging measurements of volume at the well, has

nothing to do with valuation of the barrels of oil to be taxed. The lead auditor explained the Commissioner's method of valuation:

> "The corrected values reflect an average, computed on a monthly basis, of the prices Koch paid to all of its producers for oil acquired from North Dakota leases during the period 1980 through 1983.... These values have been applied to the 137,822 barrels of volume gain oil to compute the gross production and oil extraction taxes due by Koch for the period 1980 through 1983."

When downstream metered measurements of oil volume indicate the delivery of untaxed oil, the Commissioner's method of valuing that untaxed oil "is reasonably calculated to arrive at the fair market value," *Amerada Hess Corp. v. Conrad, supra,* 410 N.W.2d at 130, of that oil at the well.

■ Koch argues that, because its purchases of oil were arm's-length transactions, the Commissioner may not assess additional taxes. We disagree. This court rejected the "proposition that value is conclusively determined by the sales contract between the producer and the purchaser if the contract is an arm's length agreement." *Amerada Hess Corp. v. Conrad, supra,* 410 N.W.2d at 129 n. 4. Koch's reliance on § 57–51–02.3, N.D.C.C., which provides, in part, that "gross value at the well for oil is the price paid for the oil under an arm's-length contract between the producer and the purchaser," is misplaced. That statute was not enacted until 1991; moreover it regulates price per barrel, rather than quantity.

■ Koch argues that the Commissioner has erroneously interpreted §§ 57–51–02 and 57–51.1–02, N.D.C.C. The Commissioner has interpreted those statutes as allowing him to use downstream metered measurements of oil volume and, if those measurements disclose a larger volume of oil than Koch had reported and paid taxes on (using a hand-gauging measurement method at the well), to tax that volume gain, with the value of that volume gain oil at the well being determined by averaging, on a monthly basis, the prices Koch paid to its producers during the period 1980 through 1983. The statutes "involved here are of a 'complex and techni-cal nature,' [and] the Commissioner's expertise in this area 'is entitled to appreciable deference.'" *NL Indus., Inc. v. North Dakota State Tax Comm'r, supra,* 498 N.W.2d at 146, quoting *True v. Heitkamp, supra,* 470 N.W.2d at 587. "The Commissioner's interpretation is a reasonable interpretation, which 'does not clearly contradict the statutory language' (*Schaefer v. Job Service North Dakota, supra,* 463 N.W.2d at 667), and does not appear to 'exceed [ ] the bounds of the authorizing legislation or ... [be] arbitrary and unjust.' *True v. Heitkamp, supra,* 470 N.W.2d at 587." *NL Indus., Inc. v. North Dakota State Tax Comm'r, supra,* 498 N.W.2d at 147. We conclude that the Commissioner has properly interpreted §§ 57–51–02 and 57–51.1–02, N.D.C.C.

■ Koch contends that much of our gross production tax legislation was drawn from Oklahoma, and, because our Legislature did not adopt Oklahoma's statute taxing unknown source oil, the Commissioner cannot assess such a tax. 68 Okla.Stats.Ann. § 1003(a) provides in part:

> "(a) It shall be the duty of the Tax Commission to collect (in addition to the gross production tax) twelve and one-half percent (12½%) of the gross value of all petroleum, crude oil or other mineral oil reported to the Tax Commission as recovered from streams, lakes, ponds, ravines and other natural depressions to which oils shall have escaped or therein was found; and twelve and one-half percent (12½%) of the gross value of all petroleum crude oil or other mineral oil which is reported to the Tax Commission and which report or reports does not disclose the actual source of said petroleum, crude oil or other mineral oil; ..."

Our Legislature's decision not to adopt such a statute is irrelevant. The Commissioner has not attempted to tax oil "recovered from streams, lakes, ponds, ravines and other natural depressions" or oil reported to the Commissioner without disclosing its source. The oil sought to be taxed by the Commissioner came from known sources—the wells from which Koch acquired it.

Koch argues that the Commissioner erred in concluding that he was not estopped from assessing taxes on the volume gains. In *Amerada Hess Corp. v. Conrad,. supra*, this court held that the Tax Commissioner's failure to adopt a rule and failure to collect a tax in the past did not estop him from assessing a tax. Koch contends that the oil sought to be taxed is unknown source oil, taking this case out of the *Amerada Hess* rule. We disagree. As we have already said, the oil sought to be taxed by the Commissioner is not unknown source oil.

The judgment is reversed and the matter is remanded for entry of judgment affirming the Commissioner's order.

VANDE WALLE, C.J., NEUMANN and SANDSTROM, JJ., and LAWRENCE E. JAHNKE, District Judge, concur.

LAWRENCE E. JAHNKE, District Judge, sitting in place of MESCHKE, J., disqualified.