Marion HURINENKO, individually, and as Trustee for the Marion Hurinenko Revocable Living Trust, as Trustee for the D. Steven Hurinenko Irrevocable Living Trust, as Trustee for the Jeffrey A. Hurinenko Irrevocable Living Trust, and as Trustee for the George Hurinenko Family Trust; Marjo P. Hurinenko, Trustee for the Marion Hurinenko Revocable Living Trust; Elane H. Hurinenko, individually, and as Trustee for the D. Ste-

ven Hurinenko Irrevocable Living Trust, as Trustee for the Jeffrey A. Hurinenko Irrevocable Living Trust, and as Trustee for the Elane H. Hurinenko Revocable Living Trust; Julia Hurinenko, individually, and as Trustee of the Julia Hurinenko Revocable Trust; D. Steven Hurinenko, individually, as Trustee for the Elane H. Hurinenko Irrevocable Living Trust, and as Trustee for the George Hurinenko Family Trust; Jeffrey A. Hurinenko, individually, as Trustee for the Elane H. Hurinenko Revocable Living Trust, and as Trustee for the George Hurinenko Family Trust, Appellants,

v.

CHEVRON, USA, INC.; William Herbert Hunt, Trust Estate; Warren Petroleum Co.; Toc–Rocky Mountains, Inc.; Petro Hunt, Inc.; MW Petroleum Corporation; Amoco Production Company; Gulf Oil Corporation, Appellees.

No. 95–1895.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 20, 1995.

Decided Nov. 13, 1995.

Mervin D. Nordeng, Fargo, North Dakota, argued, for appellants.

John W. Morrison, Jr., Bismarck, North Dakota, argued, for appellees.

Before FAGG, LAY, and HEANEY, Circuit Judges.

FAGG, Circuit Judge.

In this diversity dispute over royalties from an oil and gas lease, Marion Hurinenko and his family, the lessors, appeal the district court's order granting summary judgment to various corporations and a trust, the lessees (collectively the "oil companies"). We affirm.

Under a 1972 lease, the oil companies have the right to mine for oil and gas on the Hurinenkos' land. Oil resevoirs were discovered on the land in 1977, and the oil companies began drilling wells. The oil resevoirs on the Hurinenkos' land contain "casinghead gas." As the oil wells pump oil from the ground, this gas is also produced. The casinghead gas at issue in this case is not pure natural gas and thus cannot be transported in natural gas pipelines or sold until the contaminating compounds are removed. Initially, the gas was "flared," that is, burned off at the well. Apparently due to environmental concerns connected with flaring, the North Dakota Industrial Commission entered an order restricting oil production until the wells were connected to a gas gathering and processing facility. In 1978, the oil com-

panies completed a processing plant. Most of the gas produced at the plant is sold.

Since the beginning of gas production in 1978, the oil companies have paid the Hurinenkos royalties based on the plant's sales proceeds less costs. After accepting the payments for fifteen years, the Hurinenkos brought this lawsuit in 1993 seeking damages and cancellation of the lease. The district court granted summary judgment to the oil companies.

On appeal, the Hurinenkos contend the lease is ambiguous and thus should be construed against the oil companies. The Hurinenkos contend they are entitled to royalties based on the processing plant's gross proceeds without any deduction for processing costs. We reject the Hurinenkos' contentions.

The lease gives the oil companies the exclusive right to develop oil and gas on the land in exchange for royalties paid to the Hurinenkos. In the lease's third royalty provision, the lessees agree to pay royalties based on the "market value at the well for gas produced from any oil well and used off the premises." This provision applies because the casinghead gas is "produced from [an] oil well and used off the premises." Thus, the lease requires the oil companies to pay the Hurinenkos royalties based on the gas's "market value at the well."

This term has a well-recognized meaning in North Dakota. The North Dakota Supreme Court calculates market value at the well by the "work-back" method: deducting processing costs from gross sales revenues. *Koch Oil Co. v. Hanson*, 536 N.W.2d 702, 707 (N.D.1995); *Amerada Hess Corp. v. Conrad*, 410 N.W.2d 124, 127 n. 3 (N.D.1987). Application of the work-back formula is particularly appropriate in this case. The gas had no readily discernible market value at the well before the incursion of processing costs to separate the compounds. Indeed, in 1980 the state tax commissioner and the oil companies agreed to use the work-back method to calculate the gas's wellhead value for the purpose of state gas gross production taxes.

The established meaning of "market value at the well" distinguishes this case from *West*

*v. Alpar Resources, Inc.*, 298 N.W.2d 484, 490–91 (N.D.1980), on which the Hurinenkos rely. In *West*, the royalty provision stated the lessor would receive part of "the proceeds from the sale of the gas" and the court found the term "proceeds" was ambiguous. *Id.* at 487. The *West* court distinguished cases like this, in which the royalty obligation is to be decided "at the wellhead." *Id.* at 488.

Accordingly, we affirm the district court.